REGAN, Judge.
Plaintiff, Bettye W. Hawkins, filed this suit against her former employer, the Orleans Parish School Board, and its workmen’s compensation insurer, The Travelers Insurance Company, endeavoring to recover maximum compensation benefits for a disabling injury to her left knee which she asserts was incurred during the course and scope of her employment as a teacher’s aide at Lafayette School in the City of New Orleans.
The defendants answered and averred that the injury was not compensable since it did not result from an on-the-job accident within the intent and scope of the Louisiana Workmen’s Compensation Act.
From a judgment dismissing plaintiff’s suit, she has prosecuted this appeal.
It is evident from the record that during the month of April 1969 plaintiff was treated for a knee condition diagnosed as a torn medial meniscus, however, the significant question to be considered by us on the appeal hereof is whether plaintiff established that the disability emanated from an “accident” incurred during the course and scope of her employment.
In her original petition, plaintiff stated that she sustained an injury to her left knee, “ * * * aggravating an arthritic condition to a point where swelling and infection occurred, * * *, all because of the fact that she was caused to climb stairs *277 innumerable times, stand for long periods of time and pursue the children in her charge all during the course and scope of her employment.” This petition omits to designate a date of injury. Suit was filed July 22, 1969 and plaintiff’s deposition was taken several months later. Subsequent to the deposition, plaintiff filed an amended and supplemental petition in which she traced her first instance of knee pain to a time when she was supervising the children playing in the school yard.
When this matter came to trial, plaintiff testified that she initially felt pain in her left knee when she arose from a small chair in the first grade classroom while she was performing her duties as a teacher’s aide. She explained that one of her duties in assisting small children was to sit in a chair next to the child being assisted and work with him or her at eye level. So seated, she was in a position close to a squat because the chairs used are designed for small children and do not accommodate adults.
In the lower court her testimony concerning the first incident of pain to her knee reads in part:
“Q. Right. In other words this Wednesday in April at about eleven-thirty. Would you tell us in your own words what you felt?
“A. Well, I was stooping down. I was sitting on the children’s chair, and when I got up I felt my knee hurt me.”
At the trial in May 1970 she did not waiver in asserting that her first incident of knee pain occurred in the classroom; however, in a deposition taken nine months earlier, she described feeling a pain to the left knee for the first time when she was engaged in yard duty. Part of her deposition, introduced by defense counsel to impeach her direct testimony, reads:
“Q. I want to know where you were and approximately the time, I know you said March of ’69, when you were first having problems, but I want you to be specific as you can ?
“A. The date I can’t place it
“Q. All right. Can you remember where you were?
“A. Yes sir, I can.
“Q. Where were you ?
“A. At school.
“Q. What were you doing?
“A. I was on yard duty, down the center of the yard, in the yard * * *
^ iji 'fc ‡ jjs
“Q. Do you ever recall any specific incident to account for your trouble with your knee that occurred at any time, either at school or at home or anywhere else ?
“A. I don’t quite understand your question.
“Q. In other words, what I’m trying to ask you is: I asked you earlier if you had an accident and you said no. I’m just trying to clarify and go a little deeper to understand if anything ever happened to explain why you hurt your knee?
“A. No sir, I can’t.”
In addition to plaintiff’s own contradictory accounts of the onset of knee pain, other evidence raises serious doubts as to whether the knee was injured on the job as she alleged. She consulted an orthopedic resident at Charity Hospital, a Dr. Thomas, and he testified that she failed to relate initial pain to an incident involving either arising from a chair in the classroom or to yard duty. In addition, the plaintiff testified that she reported the incident to the school principal and the secretary. The principal appeared as a witness for the defendant and she stated that the plaintiff reported no injury to her. The plaintiff failed to call the secretary as a witness or any coworker to corroborate the time and place her leg “gave out”.
*278 Predicated on the foregoing evidence, the lower court dismissed plaintiff’s suit since she failed to prove that the injured knee was the result of an accident or incident on the job.
The plaintiff requests reversal by us as a result of the rationale emanating from the case of Francis v. Kaiser Aluminum & Chemical Corporation.[1] In that case we classed a torn medial meniscus as an “accident” within the contemplation of the compensation act. The injury was incurred by a refrigeration mechanic as he arose from a squatting position and felt something pop in his knee as he did so. We recognized the principle that not all industrial accidents result from external trauma but also include the giving away of a member of the employee’s body while engaged in his occupation. Plaintiff would have us apply that reasoning herein to conclude she is disabled; however, while we fully subscribe to the holding, we think it is inapposite to the facts before us. In Francis, credibility of the plaintiff was not at issue. The court accepted as a fact that the plaintiff tore the knee cartilage as he arose from a squatting position.
The real issue here is credibility. Plaintiff has endeavored to prove the occurrence of an industrial accident predicated on her testimony alone. There is no dispute that her knee was severely injured, but she has failed to connect this disability to any incident that occurred during the course and scope of her employment. Of course, it is possible for a plaintiff to establish the right to workmen’s compensation benefits by his or her testimony alone, however, all other facts and circumstances must corroborate, not contradict, his or her assertions. In this case, the pleadings, the deposition and the plaintiff’s testimony are all contradictory, therefore we must reach the inevitable conclusion that she has failed to prove her case with that certainty that the law requires. As we pointed out in Norman v. Glazer Steel Corporation,[2] despite the paternalistic spirit of the act, the plaintiff must still prove his or her case by a preponderance of the evidence.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.

. 225 So.2d 756 (La.App.1969).

. 199 So.2d 613 (La.App.1967).